IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BOBACK SABEERIN, MICHELLE
ROYBAL, J.R. and S.S.

    Plaintiffs,

v.                                                                   No. 1:16-cv-00497 JCH-LF

ALBUQUERQUE POLICE DEPARTMENT
DETECTIVE TIMOTHY FASSLER, in his individual capacity,
ALBUQUERQUE POLICE DEPARTMENT
DETECTIVE JOHN DEER, in his individual capacity,
CITY OF ALBUQUERQUE,
STATE OF NEW MEXICO,
SECRETARY GREGG MARCANTEL, in his official and
individual capacity,
NEW MEXICO CORRECTIONS DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On August 8, 2016 Secretary Marcantel and the New Mexico Corrections Department collectively filed a Motion to Dismiss (ECF No. 17) the claims against them. The Court, having reviewed the motion, briefs, relevant law, and otherwise being fully advised, finds that the motion should be granted. The Court also finds that Plaintiffs should be granted leave to file an amended complaint.

### I.    FACTUAL BACKGROUND

Plaintiff Boback Sabeerin is a national of Iran, but in 1986 he fled that county and came to this one as a political refugee. *See* Comp. ¶ 11, ECF No. 1. He obtained permanent residency soon after, and made a livelihood from working in and running auto repair and "body shops." *Id*. ¶¶ 12-14. In 1991, Mr. Sabeerin had a run in with the law, and was criminally charged with two counts of vehicle theft. *Id*. ¶ 15. He pleaded no contest to those charges and it appears he avoided

jail time. *Id*. This infuriated the then-officer working on the case, Defendant Detective John Deer, so much that he told Mr. Sabeerin to "watch his back." *Id*.

Nearly 20 years later, in 2009, another detective, Defendant Timothy Fassler executed a search warrant on the body shop that Mr. Sabeerin owned together with his "domestic partner," Plaintiff Michelle Roybal. *Id*. ¶¶ 14-15. When Detective Fassler entered Plaintiffs' shop to execute the warrant, he told Mr. Sabeerin, "the two detectives that worked on your case twenty years ago, work for me. Now we are going to make sure you don't get out this time. Foreigners like you don't belong in this country. I am going to do everything in my power to make sure you get deported this time." *Id*. ¶ 18. Detective Deer, the officer from the 1991 incident, came out of retirement specifically to join the investigation against Mr. Sabeerin. *Id*. ¶ 17. The search turned up a number of stolen vehicles and evidence of a VIN-switching operation. *Id*. ¶ 23.

The State brought four charges against Mr. Sabeerin for auto theft and similar charges. *Id*. ¶ 19. In Mr. Sabeerin's first case, he moved to suppress the evidence obtained as a result of the search of his business property, arguing that Detective Fassler lacked probable cause to support issuance of a warrant. *Id*. The state judge denied the motion, and Mr. Sabeerin was found guilty and jailed. *Id*. Before trial for his second charge, Mr. Sabeerin again moved to suppress the evidence, which the judge again denied. *Id*. While incarcerated, corrections officers subjected him to a number of humiliations, including dragging Mr. Sabeerin across the jail in his boxers, and refusing to let him shower before and during trial. *Id*. ¶ 20. Each time Mr. Sabeerin's appearance was required at trial or a motions hearing, corrections officers placed him in solitary confinement. *Id*. ¶ 28. These stints in solitary confinement pressurized Mr. Sabeerin – who is bi-polar and suffers from other mental illnesses – so much that he pleaded guilty to the remaining

charges to avoid further jail time. *Id.* ¶¶ 22, 90. His charges were consolidated and he was sentenced to a total of 27 years. *Id.* ¶¶ 21, 23.

Mr. Sabeerin was placed in solitary confinement throughout his incarceration. *Id.* ¶ 28. His mental disorders made him particularly vulnerable to the effects of being segregated. *Id.* ¶ 81. His mental health deteriorated and he went long periods without sleep. *Id.* ¶¶ 81-82. Corrections officers deprived him of recreation and blocked his access to group therapy sessions. *Id.* ¶ 86. Officers also withheld or delayed giving him his medications. *Id.* ¶ 81.

Meanwhile, Mr. Sabeerin appealed the trial court's denials of his motions to suppress. *Id.* ¶ 23. In August 2014 – after spending five years in prison – the New Mexico Court of Appeals reversed his conviction, holding that the property search of Plaintiffs' business was invalid for lack of probable cause. *Id.* ¶ 24. Without evidence for re-trial, the prosecution agreed to dismiss the charges against Mr. Sabeerin, and the state judge released him in November 2015. *Id.* ¶ 27. NMCD told him he would be deported, although it knew this was inaccurate because Mr. Sabeerin was a permanent resident. *Id.* ¶ 31. Instead of releasing Mr. Sabeerin, NMCD delivered him – nearly naked in a clear plastic jumpsuit – to U.S. Immigration and Customs Enforcement and intimated to ICE authorities that Mr. Sabeerin was "illegal." *Id.* ¶¶ 31, 33, 41. ICE detected no problems, and released Mr. Sabeerin in less than an hour. *Id.* ¶ 31.

Mr. Sabeerin's incarceration effectively destroyed his family and business life. *Id.* ¶¶ 34-41. His and Ms. Roybal's body shop was shuttered, its inventory impounded and sold at auction, and the couple's family unit broke apart. *Id.* ¶¶ 29, 36, 40.

## II. PROCEDURAL BACKGROUND

Plaintiffs filed their Complaint in this Court against Defendants and asserted the following claims: (I) violation of Mr. Sabeerin's and Ms. Roybal's Fourth Amendment rights

and Mr. Sabeerin's Fourteenth Amendment rights under 42 U.S.C. § 1983; (II) conspiracy to violate Mr. Sabeerin's and Ms. Roybal's Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983; (III) violation of Mr. Sabeerin's right to be free from cruel and unusual punishment under the Eighth Amendment pursuant to 42 U.S.C. § 1983; (IV) violation of Mr. Sabeerin's and Ms. Roybal's rights to be free from unlawful searches under N.M. Const. art. II, § 10; (V) conspiracy to violate N.M. Const. art. II, § 10; (VI) false arrest or imprisonment under the New Mexico Tort Claims Act; (VII) tortious abuse of process; and three claims of loss of consortium for each of Ms. Roybal, J.R., and S.S. In their Complaint, Plaintiffs' pleaded all counts against "Defendants."

Defendants Secretary Marcantel and NMCD collectively moved to dismiss, arguing that Secretary Marcantel, in his official-capacity, and NMCD are entitled to Eleventh Amendment immunity. *See* Defs.' Mot. at 1, ECF. No. 17. Secretary Marcantel additionally moved for dismissal in his individual capacity, asserting the defense of qualified immunity against Plaintiffs' federal claims. *Id*. Regarding Plaintiffs' state claims, Secretary Marcantel contends that the State of New Mexico has not waived immunity under the NMTCA for the claims asserted. *Id*. The parties agreed to drop Plaintiffs' claim against NMCD, but all other claims remain intact. *See* Pls.' Resp at 1, ECF No. 20; Defs.' Rep at 1-2, ECF No. 25.

In their response brief, Plaintiffs raised new allegations that were not contained in their Complaint. For example, they alleged that Secretary Marcantel and NMCD placed Mr. Sabeerin in solitary confinement to block his access to court to pursue post-conviction remedies. Defendants placed Mr. Sabeerin – who appealed his convictions *pro se* – in solitary confinement before and after each motions hearing, according to Plaintiffs, to pressure him to drop his appeals. Plaintiffs also amplified some of their allegations against Secretary Marcantel, detailing

his supervisory role in creating inmate discipline policies, including solitary confinement. Finally, Plaintiffs ask the Court to convert Defendants' Motion to a motion for summary judgment. Plaintiffs attached seven exhibits to their response brief that contest Defendants' version of events, and request limited discovery. Defendants oppose this request and ask the Court to ignore Plaintiffs' newly raised allegations.

## III. LEGAL STANDARDS

### A. Motion to dismiss based on qualified immunity

To survive dismissal, a complaint must set forth factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). When reviewing a plaintiff's complaint in ruling on a 12(b)(6) motion, the court must accept all well-pleaded allegations as true and construe them in a light most favorable to the plaintiff. *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

Qualified immunity operates to protect officers from the "sometimes hazy border between excessive and acceptable force and to ensure that, before they are subjected to suit, officers are on notice that their conduct is unlawful." *Saucier v. Katz*, 533 U.S. 194, 206 (2001) (internal citation and quotations omitted), *overruled on other grounds by Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Officials who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the facts known to them at the time." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). If officials of reasonable competence could disagree about the lawfulness of the challenged conduct, then the defendant is entitled to qualified immunity. *Id*.

Although a plaintiff can overcome the defense without a favorable case directly on point, existing precedent must have placed the constitutional question "beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016). "Clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, 137 S.Ct. 548, 552 (2017). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Eckert v. Dougherty*, 658 F.App'x 401, 405 (10th Cir. 2016). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, however, subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014).

**B.     Eleventh Amendment immunity**

Claims against state officials in their official capacities are essentially claims against the state entity. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represented only another way of pleading an action against an entity of which an officer is an agent."). It is well established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett*, 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Vill.of Noatak & Circle Vill.*, 501 U.S. 775, 785 – 86 (1991). Thus, an official capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

Under the framework of *Blatchford*, Secretary Marcantel, in his official capacity, has not waived his Eleventh Amendment immunity. Nor has Congress abrogated such immunity. Thus, the Eleventh Amendment bars Plaintiffs' claims for money damages in Counts I, II, and VII against Secretary Marcantel in his official capacity, and accordingly, the Court will dismiss those claims. *See Ky.*, 473 U.S. at 169 (Eleventh Amendment bars federal jurisdiction over state official acting in official capacity in suit for money damages).

C.  **Documents outside of the pleadings**

Before analyzing Plaintiffs' claims, the Court must determine if it can consider the seven exhibits that Plaintiffs attached to their responsive brief. Plaintiffs included: (i) an affidavit by Mr. Sabeerin; (ii) a blank "parole plan" issued by NMDC; (iii) e-mail correspondence between the parties' lawyers; (iv) Secretary Marcantel's biography taken from NMCD's website; (v) an NMCD regulation describing the duties of the Secretary of Correction and his subordinates; (vi) a notice of tort claim from Plaintiffs' lawyer to Secretary Marcantel; (vii) and an NMCD policy governing restrictive housing.

"Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). However, the court can properly consider the following: "documents incorporated by reference in the complaint; documents referred to in and central to the complaint, when no party disputes its authenticity; and matters of which a court may take judicial notice." *Id*. The Court will not consider any of the above documents. None were incorporated by reference in the Complaint, nor did the Complaint refer to any of them or indicate their centrality.

IV.  **DISCUSSION**

A.  **Count VII: Eighth Amendment violation**

### i. Whether Secretary Marcantel violated the Eighth Amendment

The Eighth Amendment prohibits the infliction of "cruel and unusual" punishment. *See* U.S. Const. amend. VIII. "[T]he unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986). "Among unnecessary and wanton inflicts of pain are those that are totally without penological justification." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In terms of solitary confinement, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). "An inmate making an Eighth Amendment claim for constitutionally inadequate conditions of confinement must allege and prove an objective component and subjective component associated with the deficiency" claimed. *See Shannon v. Graves*, 257 F.3d 1164, 1168 (10th Cir. 2001). "The objective component requires conditions sufficiently serious so as to deprive inmates of the minimal civilized measure of life's necessities." *Id*. "The subjective component is met if the prisoner shows the defendants knew he faced a substantial risk of harm and disregarded that risk by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999).

Plaintiffs' claim against Secretary Marcantel in his individual capacity amounts to a claim of direct supervisory liability. To establish such liability, Plaintiffs must show Secretary Marcantel's "*direct personal responsibility*" for the claimed deprivation of Mr. Sabeerin's Eighth Amendment right. *See Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (emphasis in original); *see also Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 768 (10th Cir. 2013). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated

the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). It is not enough that an official acted in a supervisory role when the plaintiff's constitutional rights were violated. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Rather, the plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation," *Schneider,* 717 F.3d at 767, which requires proof of three interrelated elements: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

Plaintiffs lodge two main complaints against Secretary Marcantel in connection with their Eighth Amendment claim: that he arbitrarily placed Mr. Sabeerin in solitary confinement, and that Mr. Sabeerin received inadequate medical care while incarcerated.

    a.    <u>Solitary confinement</u>

The first element that a § 1983 plaintiff must demonstrate against a defendant-supervisor is the defendant's personal involvement in promulgating, creating, or implementing a constitutionally deficient policy. *Id*. at 1999. The parties center their analyses on the Tenth Circuit's decision in *Dodds*, and the Court agrees that *Dodds* and its progeny are instructive to this case. There, the defendant-sheriff ignored numerous state laws requiring him to release the plaintiff, who was able to post bail and thus eligible for release. *Id* at 1202-03. The sheriff had an informal policy of releasing a detainee only after being arraigned by a judge. *Id* at 1202. In the plaintiff's case, that meant he languished in jail for two extra days. *Id*. Those two days were not trivial. As the court explained, "[t]he right of an accused to freedom pending trial is inherent in the concept of a liberty interest protected by the due process clause of the Fourteenth Amendment." *Id.* at 1192. The sheriff therefore could be held individually liable for the policy

9

even if he did not personally have contact with the plaintiff or "actually know[] of his subordinates' enforcement of these policies with regard to [p]laintiff in particular." *Id*. at 1202. The sheriff's policy was, as the Tenth Circuit described in a later case, "constitutionally infirm in the overwhelming majority of its applications, if not on its face." *Durkee v. Minor*, 841 F.3d 872, 877 (10th Cir. 2016). By way of contrast, in *Durkee*, the Tenth Circuit believed the lower court misread *Dodds* when it held a sheriff individually liable for a policy of unshackling detainees in a booking room that led to an inmate-on-inmate assault. 841 F.3d at 877. Where the policy was facially constitutional, and no other similar assaults occurred, the sheriff could not be individually liable. *Id*.

Here, Plaintiffs allege that in light of Mr. Sabeerin's mental illnesses, placing him in solitary confinement was an Eighth Amendment violation. But the Tenth Circuit previously considered and rejected a similar claim in *Hill v. Pugh,* 75 Fed.Appx. 715, 720–21 (10th Cir. 2003). There, the plaintiff was subjected to extended periods of isolation and sensory deprivation. *Id*. at 717. He claimed that placing him in solitary confinement "in disregard of his history of mental illness" amounted to cruel and unusual punishment. *Id*. The Tenth Circuit disagreed: No Eighth Amendment violation occurred in the absence of allegations that the prisoner was deprived of "minimal physical requirements - food, shelter, clothing and warmth." *Id.* at 721. This comports with the Supreme Court's view that, with solitary confinement issues generally, "the transfer of an inmate to less amenable and more restrictive quarters for nonpunitive reasons is well within the terms of confinement ordinarily contemplated by a prison sentence." *Hewitt v. Helms*, 459 U.S. 460, 468 (1983). "To the extent that such conditions are restive and even harsh," but not cruel and unusual, solitary confinement is permissible. *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

In the face of such a permissible policy, Plaintiffs have not alleged that Secretary Marcantel, say, thwarted state law and ran a renegade policy, as the defendant in *Dodds* had. The *Durkee* court indicated that a supervisor is typically liable for his "promulgation of the sort of policy at issue in *Dodds*," or "when he has actual knowledge of subordinates' past constitutional violations but does nothing to stop future occurrences." 841 F.3d at 878. Nothing in Plaintiffs' Complaint indicates that occurred here. Plaintiffs therefore have failed to demonstrate Secretary Marcantel's "*direct personal responsibility*," *Porro,* 624 F.3d at 1327.

Because Plaintiffs have not demonstrated Secretary Marcantel's personal involvement, the Court will not examine whether the next two elements, causation and culpable state of mind, are established.

b. <u>Inadequate medical care</u>

Plaintiffs also generally allege that Mr. Sabeerin received inadequate medical care while imprisoned. The problem with these allegations is their generality. Plaintiffs do allege in their Complaint that while in solitary confinement Mr. Sabeerin's mental health declined, medications were withheld from him, his sleep worsened, his bi-polar disorder made him more vulnerable to the harsh effects of confinement, and that Secretary Marcantel knew all of this. But Plaintiffs pleaded no facts that tie Mr. Sabeerin's alleged inadequate medical care to Secretary Marcantel's role as supervisor. Supervisory liability based on inadequate medical care is typically predicated on a theory of deliberate indifference; for example, the plaintiff may allege that a supervisor-defendant failed to train or supervise his subordinates. *See Dodds*, 614 F.3d at 1212. Nowhere in the Complaint do Plaintiffs substantiate any facts that would support such a claim.

**ii. Whether Secretary Marcantel violated clearly established rights**

Because Plaintiffs have insufficiently alleged that Secretary Marcantel deprived Mr. Sabeerin of his Eighth Amendment rights, the Court proceeds no further in the qualified immunity analysis. *See A.M. v. Holmes*, 830 F.3d 1123, 1134-35 (10th Cir. 2016) ("if the plaintiff fails to establish either prong of the two-pronged qualified-immunity standard, the defendant prevails on the defense."). The Court dismisses without prejudice Count VII.

**B.     Count I: Fourteenth Amendment violation**

The Due Process Clause of the Fourteenth Amendment provides that no State may "deprive any person of life, liberty, or property, without due process of law...." The Due Process Clause protects individuals against two types of governmental action: (1) "substantive due process" prevents the government from engaging in action that "shocks the conscience" or "interferes with rights implicit in the concept of ordered liberty," and (2) "procedural" due process ensures that government action is implemented in a fair manner. *See United States v. Salerno*, 481 U.S. 739, 746 (1987).

Under the Fourteenth Amendment, the "[s]tate does not acquire the power to punish ... until after it has secured a formal adjudication of guilt." *Ingraham v. Wright*, 430 U.S. 651, 671 n. 40 (1977). Thus "the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 US 386, 395 n. 10 (1989). In determining "what does and [does not] constitute 'punishment[,]'" *Blackmon v. Sutton*, 734 F.3d 1237, 1242 (10th Cir. 2013), the Tenth Circuit has explained that "a restriction on a pretrial detainee does not constitute punishment unless it is (1) intended as punishment or (2) unrelated to a legitimate government objective." *Cordova v. City of Albuquerque*, 816 F.3d 645, 655 n. 5 (10th Cir. 2016).

Plaintiffs' Complaint can be fairly read to allege that Mr. Sabeerin was placed in solitary confinement, as a pretrial detainee, more than once, and, that in one case he was confined for a month. Secretary Marcantel personally created and executed the policies that led to Mr. Sabeerin's confinement, Plaintiffs contend. This was tantamount to punishment, Plaintiffs argue, and therefore Secretary Marcantel's conduct shocks the conscious sufficiently to violate the Fourteenth Amendment.

It is Plaintiffs' burden to show that Secretary Marcantel violated a clearly established constitutional right. Mindful of this, the Court first examines whether Plaintiffs' Complaint sufficiently alleges a violation of clearly established law. *See A.M.*, 830 F.3d at 1135 (explaining that a court has discretion to address the sequence of the qualified immunity analysis). "Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as [she] maintains." *Id*.

Here, Plaintiffs have not identified an on-point Supreme Court or Tenth Circuit case, or a case from another court. In fact, Plaintiffs have not cited a single case – at all – supporting Plaintiffs' position that placing Mr. Sabeerin in solitary confinement as a pretrial detainee violated the Fourteenth Amendment. The Court therefore dismisses without prejudice Plaintiffs' Fourteenth Amendment claim in Count I against Secretary Marcantel.

C.    **Count II: Conspiracy to violate the Fourth and Fourteenth Amendments**

"[A] conspiracy to deprive a plaintiff of a constitutional or federally protected right under color of state law" pursuant to § 1983 is actionable. *See Snell v. Tunnell,* 920 F.2d 673, 701 (10th Cir. 1990). In order to prevail on such a claim, the plaintiff "must plead and prove not only a

conspiracy, but also an actual deprivation of rights; pleading and proof of one without the other will be insufficient." *Id.* "A conspiracy requires the combination of two or more persons acting in concert." *Salehpoor v. Shahinpoor,* 358 F.3d 782, 789 (10th Cir.2004). "In order to plead a conspiracy claim, a plaintiff must allege, either by direct or circumstantial evidence, a meeting of the minds or agreement among the defendants." *Id.* The plaintiff must show that there was "a single plan, the essential nature and general scope of which [was] know [sic] to each person who is to be held responsible for its consequences." *Snell,* 920 F.2d at 702.

According to Plaintiffs, NMCD and Secretary Marcantel conspired to place Mr. Sabeerin in solitary confinement to break his resolve so he would plead guilty to his remaining charges. The Complaint, however, pleads very few and very inconsistent facts to support this charge. For example, it alleges that Mr. Sabeerin entered a guilty plea "*on the advice of counsel* and because of his mental condition of terror occasioned by his treatment at Defendant's [sic] hands." (emphasis added). *See* ECF. No. 1, ¶ 21. Plaintiffs' contentions amount to little more than conclusory allegations, which the Court disregards. *See Hunt v. Bennett*, 17 F.3d 1263, 1266 (10th Cir. 1994) (stating that "[c]onclusory allegations of conspiracy are insufficient to state a valid § 1983 claim."). Accordingly, the Court dismisses Count II against Secretary Marcantel without prejudice.

**D.     Counts III, IV, V, and VII: Claims brought under the New Mexico Tort Claims Act**

The New Mexico Tort Claims Act specifically includes state constitutional violations committed by public officers and governmental entities within the torts for which liability may be found. *Begay v. State*, 1985-NMCA-117, 723 P.2d 252, *rev'd on other grounds by Smialek v. Begay*, 1986-NMSC-049, 721 P.2d 1306. A person cannot sue the public officers and governmental entitles for damages for violation of a state constitutional right, however, absent a

waiver of immunity under the NMTCA. *Valdez v. State*, 2002-NMSC-028, ¶ 12, 54 P.3d 71, 77. If no specific waiver is found in the NMTCA, the claim must be dismissed. *See Begay v. State,* 723 P.2d at 255–56.

Plaintiffs' Complaint fails to identify which waiver under the NMTCA applies to their state law claims. Thus, their Complaint has not shown Secretary Marcantel's immunity is waived. The Court therefore dismisses without prejudice Counts III, IV, V, and VII against Secretary Marcantel.

### E.     Count VI: Abuse of Process

"In a malicious abuse of process claim, a claimant must establish three elements: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages." *LensCrafters, Inc., v. Kehoe*, 2012-NMSC-020, ¶ 29, 282 P.3d 758, 766. Plaintiffs allege that "Defendants misused the legal process by bringing charges against the Plaintiff that lacked probable cause and the proceedings against Sabeerins' [sic] and with malice." The Court dismisses this claim. Secretary Marcantel – who is neither a law enforcement officer nor a prosecutor – never used judicial process against Mr. Sabeerin. Count VI is accordingly dismissed without prejudice.

### F.     Counts VIII, IX, X: Loss of Consortium

Loss of consortium is a derivative cause of action, so that the plaintiff may not recover unless the defendant's misconduct harmed the person in relation to the plaintiff. *See McLelland v. United Wisc. Life Ins. Co.*, 1999-NMCA-055, ¶ 26, 980 P.2d 86, 310. Because Plaintiffs have not pleaded facts demonstrating Secretary Marcantel's liability, the Court need not address Plaintiffs' loss of consortium claim. Counts VIII, IX, and X are dismissed without prejudice.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss **(ECF No. 17)** is **GRANTED**.

**IT IS ALSO ORDERED** that Plaintiffs' claims against Secretary Marcantel and NMCD are **DISMISSED without prejudice.**

The Court interprets Plaintiffs' Rule 56 request as a request for leave to file an amended complaint. Plaintiffs may file an amended complaint compliant with this Memorandum and Order and Rule 11 of the Federal Rules of Civil Procedure within **14 DAYS** of entry of this Order.

_____
**UNITED STATES DISTRICT JUDGE**