IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

BOBACK SABEERIN, MICHELLE
ROYBAL, J.R. and S.S.,

    Plaintiffs,

v.                                                                                                       No. 1:16-cv-00497 JCH-LF

ALBUQUERQUE POLICE DEPARTMENT
DETECTIVE TIMOTHY FASSLER, in his individual capacity,
ALBUQUERQUE POLICE DEPARTMENT
DETECTIVE JOHN DEER, in his individual capacity,
CITY OF ALBUQUERQUE,
STATE OF NEW MEXICO,
SECRETARY GREGG MARCANTEL, in his official and
individual capacity,
NEW MEXICO CORRECTIONS DEPARTMENT,

    Defendants.

## MEMORANDUM OPINION AND ORDER

A former inmate and his family bring this action under 42 U.S.C. § 1983. The Court has afforded Plaintiffs two opportunities to amend their complaint and to conduct limited discovery to identify and name "John Doe" correctional officer-defendants whom Plaintiffs allege withheld mental health treatment from Plaintiff Boback Sabeerin and interfered with his access to the courts. Secretary Marcantel, in his individual capacity, now moves for the third time to dismiss Plaintiffs' Second Amended Complaint based on qualified immunity. *See* Defs.' Mot. to Dismiss, ECF No. 73.[1] In each motion to dismiss, Secretary Marcantel correctly argued that Plaintiffs must show that he violated Plaintiffs' clearly established constitutional rights. The

---

[1] Defendants State of New Mexico, the New Mexico Corrections Department ("NMDC"), and Secretary Marcantel in his official capacity ("State Defendants") also move for dismissal. However, in their response brief, Plaintiffs make clear that pursuant to an earlier stipulated dismissal, Plaintiffs assert no causes of action against the State Defendants. Thus, the Court's analysis is limited to the individual-capacity claim against Secretary Marcantel.

Court, too, in its previous dismissal without prejudice of Plaintiffs' first complaint, alerted Plaintiffs to this pleading responsibility. The Court has done its best to hear Plaintiffs on the merits. But because Plaintiffs' response brief, now in its third iteration, fails to identify caselaw demonstrating that Secretary Marcantel violated Mr. Sabeerin's clearly established constitutional rights, the Court **GRANTS** Secretary Marcantel's motion and dismisses with prejudice all claims against him.

## I. FACTUAL BACKGROUND

Some of the facts necessary to resolve the pending motion to dismiss are set forth in the Court's Memorandum Opinion and Order previously granting Secretary Marcantel's and NMCD's joint motion to dismiss. *See* Mem. Op. and Order, ECF No. 38 ("Order"). The Court need not repeat all of those facts herein but adopts them by reference for the purposes of resolving the motion to dismiss. The Court presents the following additional facts taken from Plaintiffs' Second Amended Complaint and views them in the light most favorable to Plaintiffs.

### a. Mr. Sabeerin's Trials and Mistreatment in Prison

In August 2009, Defendant Detective Timothy Fassler of the Albuquerque Police Department executed a search warrant on Mr. Sabeerin's business property in Northeast Albuquerque. The search turned up several stolen vehicles and evidence of a VIN-switching operation, so state prosecutors brought four criminal cases against Mr. Sabeerin for auto theft and similar charges.

Before his first and second trials, Mr. Sabeerin unsuccessfully moved to suppress the evidence obtained because of the search of his property, arguing that Detective Fassler lacked probable cause to support issuance of a warrant. Although the state judge denied those motions, each time the court held a pre-trial motion hearing, NMCD correctional officers placed Mr.

Sabeerin in solitary confinement beforehand. These placements in solitary confinement served no penological purpose. Rather, they were in retaliation for Mr. Sabeerin filing pre-trial motions to suppress and thus designed to dissuade him from filing future legal actions and chill his access to the courts.

In August 2011, before Mr. Sabeerin's second trial, Lieutenant Rigdon and other officers dragged Mr. Sabeerin across the jail in his boxers and refused to let him shower for six days before trial. He smelled so bad at trial that the judge allowed his attorney to bring him a razor and towels to clean himself up. Like the placements in solitary confinement, Secretary Marcantel denied Mr. Sabeerin sanitary implements to dissuade him from accessing the courts. Secretary Marcantel "made the rules, regulations, and policies which were enforced to obtain this effect." In addition, Secretary Marcantel was "deliberately indifferent to the substantial risk to [Mr. Sabeerin's] health and safety so as to restrict [his] ability to access the courts."

### b. Mr. Sabeerin's Repeat Placements in Solitary Confinement

As noted, every time the state court held a pre-trial motion hearing or before one of his cases went to trial Mr. Sabeerin was placed in solitary confinement. He was segregated in solitary confinement at the Metropolitan Detention Center from February 10-17, 2010; July 18-24, 2010; July 27-September 1, 2010. In addition, he was placed in solitary confinement at the Central New Mexico Correctional Facility in Los Lunas, New Mexico from May 18-24, 2010 September – October, 2010; December 11 – January 12, 2011, and November 1, 2015 – November 15, 2015.

### c. Mr. Sabeerin's Detention in Solitary Confinement Motivates Him to Plead Guilty

Juries found Mr. Sabeerin guilty in his first two criminal cases. Mr. Sabeerin pleaded guilty to the remaining two consolidated charges to reduce his sentencing exposure, and he was

3

sentenced to a total of 27 years in jail. However, his previous placements in solitary confinement pressured him to plead guilty. He "was so terrified of the effects of this solitary confinement had had on him, and when combined with cyclical application of drugs, he simply could not maintain his defense against" the future prosecutions "without inhumane suffering." Solitary confinement was so harsh that Mr. Sabeerin "was forced to plead guilty to certain indictments simply to avoid further solitary confinement which was making him ill." The "intended effect" of Secretary Marcantel's policies and procedures governing solitary confinement and the "moving reason" for Secretary Marcantel's decision to place Mr. Sabeerin in solitary confinement were to penalize him for accessing the legal system. His mental disorders, including his bi-polar condition, made him particularly vulnerable to the effects of being segregated. Mr. Sabeerin's placement in solitary confinement exacerbated his pre-existing mental disabilities and created new ones, likes post-traumatic stress disorder.

### d. Inconsistent Administration of Mr. Sabeerin's Psychiatric Medications

Solitary confinement produced increasingly severe mental and psychiatric issues in Mr. Sabeerin and he was enrolled in the chronic psychiatry program. Prison officials inconsistently administered his medications while he was in solitary confinement, thereby worsening his mental health. Officials increased his prescriptions to control his legal filings, resulting in long periods without sleep and a deterioration in Mr. Sabeerin's mental health. Sometimes Mr. Sabeerin would go two or three weeks without medications because his appointments were canceled. Mr. Sabeerin contends that "[p]rison solitary records, and medical records, constantly memorialize these complaints about the incarceration in solitary, and the psychiatric problems being caused by it, as being a result of the stress brought on by his, 'legal activities.'" Secretary Marcantel's policies and procedures were used to "render [Mr. Sabeerin] mentally unfit … and cause him

harm. Defendant Marcantel's adoption of these policies, procedures, rules, and regulations were deliberate and intentional, and he knew and understood their effect."

### e. Retaliation against Mr. Sabeerin for Pursuing Post-Conviction Relief

While jailed, Mr. Sabeerin appealed the trial court's denials of his motions to suppress to the New Mexico Court of Appeals. Each time the trial court heard a post-conviction motion, correctional officers placed Mr. Sabeerin in solitary confinement as a form of retaliation for appealing his case.

In August 2014 the Court of Appeals reversed Mr. Sabeerin's conviction. The court agreed with Mr. Sabeerin that the property search of his and Ms. Roybal's business was invalid for lack of probable cause. Plaintiffs now bring this action under 42 U.S.C. § 1983 for various violations of constitutional rights stemming from Mr. Sabeerin's arrest by APD officers and his time in custody.

## II. PROCEDURAL BACKGROUND

### a. Plaintiffs' Previous Two Complaints

In their original complaint Plaintiffs asserted the following claims against all Defendants: (I) violation of Mr. Sabeerin's and Ms. Roybal's Fourth Amendment rights and Mr. Sabeerin's Fourteenth Amendment rights under 42 U.S.C. § 1983; (II) conspiracy to violate Mr. Sabeerin's and Ms. Roybal's Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983; (III) violation of Mr. Sabeerin's right to be free from cruel and unusual punishment under the Eighth Amendment pursuant to 42 U.S.C. § 1983; (IV) violation of Mr. Sabeerin's and Ms. Roybal's rights to be free from unlawful searches under N.M. Const. art. II, § 10; (V) conspiracy to violate N.M. Const. art. II, § 10; (VI) false arrest or imprisonment under the New Mexico Tort Claims

Act; (VII) tortious abuse of process; and three claims of loss of consortium for each of Ms. Roybal, J.R., and S.S. *See* Pls.' First Compl., ECF No. 1.

Secretary Marcantel and NMCD collectively moved to dismiss, arguing that Secretary Marcantel, in his official-capacity, and NMCD were entitled to Eleventh Amendment immunity. *See* ECF. No. 17. Secretary Marcantel additionally moved for dismissal in his individual capacity, asserting the defense of qualified immunity against Plaintiffs' federal claims. *Id*. Regarding Plaintiffs' state law claims, Secretary Marcantel contended that the State of New Mexico had not waived immunity under the NMTCA for the claims asserted. *Id*. The parties voluntarily dismissed Plaintiffs' claim against NMCD, but all other claims remained intact. *See* ECF No. 20; ECF No. 25.

On November 13, 2017, the Court granted the entirety of Secretary Marcantel's motion, thereby dismissing all of Plaintiffs' claims asserted against him. *See* Order. However, that dismissal was without prejudice. The Court *sua sponte* permitted Plaintiffs to re-plead their complaint because Plaintiffs raised new allegations in their opposition briefs not contained in their original complaint. Plaintiffs filed an Amended Complaint on November 30, 2017. About one month later, Plaintiffs voluntarily dismissed all counts asserted against the State of New Mexico and all counts against Secretary Marcantel in his official capacity. *See* Notice of Stipulated Dismissal, ECF No. 45 ¶ 1. In addition, Plaintiffs voluntarily dismissed three loss-of-consortium counts asserted against Secretary Marcantel in his individual capacity. *See id.* at ¶ 2.

In October 2018, the Court held that it would reserve ruling on Secretary Marcantel's second motion to dismiss Plaintiffs' Amended Complaint. The Court afforded Plaintiffs limited discovery into the identities of "John Doe" correctional officers who participated in the alleged misconduct against Mr. Sabeerin.

### b. Plaintiffs' Second Amended Complaint

After that limited discovery closed, Plaintiffs filed their Second Amended Complaint on February 22, 2019, which is the subject of Secretary Marcantel's pending motion to dismiss. In that complaint, Plaintiffs identified by name six NMCD subordinate employees. However, Plaintiffs did not name them as defendants. Plaintiffs also amplified many allegations against "Officer/Lieutenant Rigdon." However, the Court agrees with Secretary Marcantel that, without knowing Lt. Rigdon's first name, he effectively remains a "John Doe" defendant. The Court afforded Plaintiffs the opportunity to ascertain the identities of responsible subordinate officials. However, a case cannot proceed against an unnamed "Lt. Rigdon," who is for all purposes an unknown defendant.

Because at times Plaintiffs use the generic term "Defendants" without identifying the particular Defendant, it is not clear from Plaintiff's Second Amended Complaint which of the 11-counts are asserted against Secretary Marcantel. Thus, to the extent that Plaintiffs assert causes of action against Secretary Marcantel for Conspiracy to Violate Article II, Section 10 of the New Mexico Constitution (Count IV); False Arrest or Imprisonment Under the New Mexico Tort Claims Act (Count V); and three counts of Loss-of-Consortium asserted by Michelle Roybal, J.R., and S.S. (Counts IX – XI, respectively) those counts are dismissed for the reasons already articulated in the Court's previous Order dismissing without prejudice Plaintiff's first complaint.

Accordingly, only two counts in Plaintiffs' Second Amended Complaint against Secretary Marcantel in his individual capacity remain pending: Count VII for violation of Mr. Sabeerin's right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and under an analogous provision of N.M. Const. art.

II, § 14,[2] and Count VIII for violation of Mr. Sabeerin's right to access the justice system freely and without impediments under the First and Fourteenth Amendments. In Plaintiffs' Eighth Amendment claim, they allege that Secretary Marcantel personally oversaw the deficient delivery of mental health and medical care in the State's prisons systems. As for their First Amendment claim, Plaintiffs allege that Secretary Marcantel retaliated against Mr. Sabeerin for engaging in the constitutionally protected activity of accessing the courts to litigate his motions to suppress and his post-conviction appeals. Plaintiffs contend that Secretary Marcantel designed and used solitary confinement as a way dissuade Mr. Sabeerin from filing legal actions.

Those two pending counts are the subject of this motion to dismiss, which the Court analyzes after recounting the relevant standard of review.

## III. DISCUSSION

### a. Standard of Review

Secretary Marcantel moves to dismiss the Plaintiffs' action under Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6) "a complaint must contain

---

[2] Plaintiffs cite the wrong section of New Mexico's constitutional analog to the federal Eighth Amendment. Plaintiffs allege that Mr. Sabeerin "ha[d] a … substantive due process right to humane conditions of confinement and adequate medical care under Article II Section 14 of the New Mexico Constitution." However, that provision deals with New Mexico's constitutional rules concerning the pre-trial and trial rights of the accused. It does not encompass Plaintiffs' allegations concerning humane conditions of confinement.

The constitutional provision that does arguably deal with such allegations is found at N.M. Const. art. II, § 13, New Mexico's constitutional analog to the federal Eighth Amendment. That section prohibits, among other things, the infliction of cruel and unusual punishment. Giving Plaintiffs the benefit of the doubt, the Court construes Plaintiffs' Second Amended Complaint as asserting a cause of action under N.M. Const. art. II, § 13, and not under § 14.

sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Generally, when ruling on a 12(b)(6) motion, the court assumes that the facts alleged in the complaint are true and draws all reasonable factual inferences in the nonmoving party's favor. *See Sylvia v. Wisler*, 875 F.3d 1307, 1313–14 (10th Cir. 2017). A complaint need not provide "detailed factual allegations," but it must "provide the grounds of [the plaintiff's] entitlement to relief" with "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).

### b. Analysis

State officials "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time." *District of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotations and citations omitted). Qualified immunity operates to protect "all but the plainly incompetent or those who knowingly violate the law." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). "Officials who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the facts known to them at the time." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006). If officials of reasonable competence could disagree about the lawfulness of the challenged conduct, then the defendant is entitled to qualified immunity. *Id*.

Although a plaintiff can overcome the defense without a favorable case directly on point, *see Hope v. Pelzer,* 536 U.S. 730, 739-42 (2002), existing precedent must have placed the constitutional question "beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016). "Clearly established law" must not be defined "at a high level of generality." *White v. Pauly*, 137

S.Ct. 548, 552 (2017). "Once the qualified immunity defense is asserted, the plaintiff bears a heavy two-part burden to show, first, the defendant's actions violated a constitutional or statutory right, and, second, that the right was clearly established at the time of the conduct at issue." *Thomas v. Kaven,* 765 F.3d 1183, 1194 (10th Cir. 2014). At the first step of this two-part test, the plaintiff must "adequately allege the violation of a constitutional … right." *Moya v. Garcia*, 895 F.3d 1229, 1232 (10th Cir. 2018). And at the second step – the clearly established prong – "the plaintiff must point to a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Callahan v. Unified Gov't of Wyandotte Cty.*, 806 F.3d 1022, 1027 (10th Cir. 2015). "Asserting a qualified immunity defense via a Rule 12(b)(6) motion, … subjects the defendant to a more challenging standard of review than would apply on summary judgment." *Kaven*, 765 F.3d at 1194.

Plaintiffs' First and Eight Amendment claims against Secretary Marcantel in his individual capacity are claims of direct supervisory liability. To establish such liability, Plaintiffs must show Secretary Marcantel's "*direct personal responsibility*" for the claimed deprivation of Mr. Sabeerin's First and Eighth Amendment rights. *Porro v. Barnes*, 624 F.3d 1322, 1327 (10th Cir. 2010) (emphasis in original); *see also Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760 768 (10th Cir. 2013). "Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. It is not enough that an official acted in a supervisory role when the plaintiff's constitutional rights were violated. *Dodds v. Richardson*, 614 F.3d 1185, 1195 (10th Cir. 2010). Rather, the plaintiff "must show an 'affirmative link' between the supervisor and the constitutional violation," *Schneider,* 717 F.3d

at 767, which requires proof of three interrelated elements: "(1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with the state of mind required to establish the alleged constitutional deprivation." *Dodds*, 614 F.3d at 1199.

The Court does not adjudicate whether Secretary Marcantel's policies – or lack thereof – deprived Plaintiffs of a constitutional right under the First or Eighth Amendments. The Court uses its discretion to proceed directly to the second prong of the qualified immunity defense – whether Secretary Marcantel violated clearly established law by placing Mr. Sabeerin in solitary confinement in light of his mental illnesses, inconsistently administering Mr. Sabeerin's medications, providing him inadequate sanitary implements, and restricting his access to pursue post-conviction relief and litigate his state court motions to suppress. "For a constitutional right to be clearly established, [t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (internal quotations omitted). Plaintiffs "shoulder[] the responsibility in the first instance of citing to [the Court] what [they] think[] constitutes clearly established law." *Id.* at 1152.

Plaintiffs cited no "clearly established" law whatsoever. Instead, they cite very general principles of First and Eighth Amendment law. But general principles of First and Eight Amendment law may not be a source of particularized clearly established law. *See A.M.*, 830 F.3d at 1135 (stating that "the clearly-established-law inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition.") (citing *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam)). Plaintiffs' failure to identify clearly established law is alone sufficient to dismiss Plaintiffs' claims against Secretary Marcantel. *See A.M.*, 830 F.3d at

11

1135, 1147 ("Once a defendant asserts qualified immunity, the plaintiff bears the burden of satisfying a "strict two-part test" showing in part that "any constitutional violation was grounded in then-extant clearly established law.""). Throughout this litigation both the Court and Secretary Marcantel alerted Plaintiffs to their pleading burden on the clearly established prong and to the mechanics of § 1983 litigation. Despite repeated admonitions, Plaintiffs simply ignored those statements.[3] This omission is fatal to their claims. *See Moya*, 895 F.3d at 1232 ("[t]o avoid qualified immunity at the motion-to-dismiss stage, a plaintiff must show that … the right was clearly established at the time of [violation].") (internal quotations omitted); *Matthews v. Bergdorf*, 889 F.3d 1136, 1145 (10th Cir. 2018) ("The record must clearly demonstrate that the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity.") (citations and internal quotations omitted). The Court dismisses Plaintiffs' First and Eighth Amendment claims against Secretary Marcantel for failure to answer the purely legal question of whether those claims were clearly established.[4]

**IT IS THEREFORE ORDERED that** Secretary Gregg Marcantel's, State of New Mexico's, and New Mexico Corrections Department's Motion to Dismiss Second Amended

---

[3] Rather than identifying clearly established caselaw, much of Plaintiffs' response brief is devoted to explaining that they were unable to uncover the actions of Secretary Marcantel and his subordinate officers without discovery. However, normally the bedrock legal question of whether the defendant's conduct violated clearly established law must be resolved before discovery begins because qualified immunity is a defense from suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Despite circumscribed discovery in § 1983 litigation, the Court did afford Plaintiffs limited discovery to substantiate their allegations.

[4] Neither party made any legal arguments concerning Plaintiffs' claims under N.M. Const. art. II, § 14, New Mexico's analog to the federal Eighth Amendment. However, because Secretary Marcantel expressly moved for dismissal of the entire Seconded Amended Complaint, and because Plaintiffs failed to oppose dismissal of their state constitutional claims, the Court dismisses Plaintiffs' claims brought under N.M. Const. art. II, § 14.

Complaint **[ECF No. 73]** is **GRANTED** and that all claims by Plaintiffs against Secretary Marcantel are dismissed with prejudice.

    **IT IS SO ORDERED**.

                                                              _____
                                                             UNITED STATES DISTRICT COURT JUDGE